**JOHNSTON BOILER COMPANY,**
**Plaintiff-Appellant,**

v.

**LOCAL LODGE NO. 893, INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS, AFL–CIO, Defendant-Appellee.**

No. 83–1717.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 26, 1984.

Decided Jan. 18, 1985.

Rehearing and Rehearing En Banc Denied March 5, 1985.

Craig A. Mutch (argued), Peter J. Kok, Miller, Johnson, Snell, Cummiskey, Grand Rapids, Mich., for plaintiff-appellant.

Darryl R. Cochrane (argued), McCroskey, Feldman, Cochrane & Brock, Muskegon, Mich., for defendant-appellee.

Before MARTIN and JONES, Circuit Judges, and POTTER, District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

This is an appeal from the affirmation of an arbitration award under a collective bargaining agreement. The arbitrator held that the employer was justified in discharging the employee, but that the employer did not meet the technical requirements of the contract in making the discharge. The arbitrator therefore refused to uphold the discharge. We reverse.

Cletus Thiele, an employee of Johnston Boiler Company, had a long history of insubordination and poor work habits. Things finally came to a head in late April of 1982, and on April 29, 1982, he was suspended and required to leave the plant. The next day, Johnston Boiler's director of personnel wrote the following letter to the union:

April 30, 1982

Chairman, Grievance Committee
Local Lodge 893
Boilermaker's Union

Dear Lester,

At a staff meeting this morning a decision was made to terminate the employment of Cletus Thiele. He will be placed on suspension without pay during the five working days scheduled next week. This will give us an opportunity to review the circumstances affecting this ac-

* Honorable John W. Potter, United States District Judge for the Northern District of Ohio, sitting by designation.

tion, and the discharge will not become effective until Friday, May 7, 1982.

Thiele's discharge is the result of a long history of problems, some concerned with poor workmanship, but primarily his inability to cooperate with supervision. We will make available to the committee copies of all documentation which is pertinent.

We ask that you advise Thiele as to his contractual rights under the grievance procedure. If a grievance is filed, we will proceed in accordance with Section 10.9 of the contract, commencing with the third step, and asking for the immediate selection of an arbitrator, and, if agreeable, will ask for a bench decision.

Sincerely,

[s] Bert Wicks

Bert Wicks

For the Company

A shorter letter to the same effect was sent to Thiele the same day.

Company and union officials met to discuss the discharge on May 4, 1982, the second working day after the date of the letter. The company made it clear that it did not intend to retain Thiele as an employee, and the president of the local lodge "raised hell" because the company would not change its mind. A further meeting on May 5 was similarly unproductive. Johnston Boiler on May 7 wrote Thiele that his employment would be terminated at the close of that working day and enclosed a closing check, and the matter went into arbitration.

The arbitrator agreed that Johnston Boiler was justified in discharging Thiele, writing that Thiele's conduct showed "a prolonged series of challenges by him to Company authority terminating in a clear challenge to supervision in this particular case. It is not possible to assess the affect [sic] and the harm done to the Company in the eyes of other employees who must have viewed the Grievant's acts." However, the arbitrator ruled that the employer had not followed the procedure spelled out in section 10.9 of the collective bargaining agreement. Section 10.9 reads:

**Section 10.9—Procedure in Discharge Cases.** In all cases where the company intends to discharge an employee, the employee shall be treated as being on suspension without pay for up to five (5) working days. The employee may be reinstated with pay if no discipline is warranted. During such five (5) day period the Company shall at the request of the Union meet to discuss the facts involved in the case and the discipline to be invoked. If no such meeting is requested during such five (5) day period, the contemplated discharge shall become final and no further claim or grievance may be presented concerning such discharge. If such meeting is requested and the Company and Union cannot agree on the disposition of the case, the Union may file a grievance with respect to the discharge commencing with the third step of the Grievance Procedure. The Union committee chairman will receive written notice of any suspension promptly after it is issued. The parties may mutually request the arbitrator to issue a bench decision on all discharge cases.

The arbitrator therefore refused to give the discharge effect.

The arbitrator apparently determined that the company actually terminated Thiele on April 30, the date of its letter, rather than waiting the five working days required by section 10.9. As a result, it was impossible to hold any meetings to discuss the discharge before it took effect. The meetings actually held were by implication post-discharge grievance meetings, rather than the contractually required pre-discharge meetings. The company argues that the arbitrator exceeded the scope of the submission to him, and that he departed from the essence of the collective bargaining agreement.

Labor disputes are one of several areas where, by and large, both the parties and the courts are better served by nonjudicial resolution of disputes: the parties benefit from the additional expertise and attention that they or their chosen decisionmaker can

bring to bear on the dispute, and the courts benefit by being better able to concentrate on disputes that do require their attention. This broad national policy in favor of informal, nonjudicial resolution of labor disputes is the source of the policy in favor of the finality of arbitration. *Bakers Union Factory, #326 v. ITT Continental Baking Co.,* 749 F.2d 350, 354 (6th Cir.1984).

■■■ The Supreme Court expressed this policy with piercing clarity in the famous *Steelworkers Trilogy.* If parties are reluctant to arbitrate a dispute covered by an arbitration clause, the courts can order arbitration. "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960) (footnote omitted). "The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." *United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346–47, 4 L.Ed.2d 1403 (1960). After the arbitrator has resolved a dispute, "[t]he refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements." *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960).

■■■ Considering the strong presumptions in favor of a party's right to arbitration and the extent of an arbitrator's authority, it would be a strange and grudging interpretation of *Steelworkers Trilogy* to demand that arbitrators stay narrowly within the technical limits of the submission. We do not mean to imply that an award that clearly goes beyond the grievance submitted to the arbitrator is enforceable. *See Local 791, International Union of Electrical, Radio & Machine Workers v. Magnavox Co.,* 286 F.2d 465 (6th Cir. 1961). And, bearing in mind that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," *Warrior & Gulf,* 363 U.S. at 582, we do not mean to imply that parties cannot limit the arbitrator's authority by careful drafting of the submission. *See Buckeye Cellulose Corp. v. District 65, Division 19, UAW,* 689 F.2d 629 (6th Cir.1982) (per curiam). But we do hold that the presumption of authority that attaches to an arbitrator's award applies with equal force to his decision that his award is within the submission.

■■■ In this case, the parties did not draft a formal submission to the arbitrator. Thiele's grievance form indicated only that he had been "unjustly suspended" without "just cause." The company argues that, as it was the grievance that was being arbitrated, the arbitrator was restricted to a determination whether the cause for termination was just; having found that it was, he could not go on and determine the procedural propriety of the discharge. We disagree. The determination of procedural fairness is sufficiently integral to "just cause" to sustain the arbitrator's decision to decide that issue, when the submission did not make it clear that procedural fairness was not in question. *Anaconda Co. v. District Lodge No. 27 of the International Association of Machinists,* 693 F.2d 35, 37 (6th Cir.1982) (per curiam); *Chauffeurs Local Union No. 878 v. Coca-Cola Bottling Co.,* 613 F.2d 716, 719–21 (8th Cir.), *cert. denied,* 446 U.S. 988, 100 S.Ct. 2975, 64 L.Ed.2d 847 (1980).

■■■ Finding that the arbitrator acted properly in considering whether Cletus Thiele's discharge followed contract procedure, we turn to the question whether his decision that Johnston Boiler did not follow the procedure can be sustained. The decision must be sustained, "so long as it draws its essence from the collective bargaining agreement." *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). That standard, as applied,

means that the award will be sustained unless the award "disregard[s] or modiff[ies] plain and unambiguous provisions" of the collective bargaining agreement or "an examination of the record before the arbitrator reveals no support whatever for his determinations" of facts. *Storer Broadcasting Co. v. American Federation of Television & Radio Artists, Cleveland Local,* 600 F.2d 45, 47 (6th Cir.1979).

Here the question is, did the arbitrator disregard or modify the plain and unambiguous provisions of section 10.9 of the collective bargaining agreement in applying it to these facts? The union contends that we need look no further than the opening sentence of the company's letter: "At a staff meeting this morning a decision was made to terminate the employment of Cletus Thiele." The union's argument seems to be in essence, that although the company followed the letter of the collective bargaining agreement, it actually formed a forbidden determination to discharge Thiele on April 30, rendering the subsequent meetings meaningless.

Section 10.9, however, begins, "In all cases where the Company *intends* to discharge an employee...." We do not see how "intends" can be construed otherwise than that the company may intend to make the discharge. "This language is precise and clear; it is not susceptible to construction or interpretation." *Industrial Mutual Association v. Amalgamated Workers, Local Union No. 383,* 725 F.2d 406, 411 (6th Cir.1984). The purpose of the five-day period is to force the company to keep the discharge tentative, but that cannot mean that the company must keep it tentative in its own mind. Were it otherwise, Johnston Boiler could never discharge its worst employees, for the very need to get rid of them would be a guilty intent.

Here, Johnston Boiler plainly followed the letter of the contract. The only fault of which it has been accused was to intend to make the discharge, and that was envisioned by the collective bargaining agreement. The negotiations served their purpose of giving the union an opportunity to convince the employer of its error, or to offer favorable concessions; the Boilermakers were able to meet neither of these burdens. We frankly do not know what more the employer could have done to give Thiele his procedural protections under the contract.

Because we find that the arbitrator's award departs from the clear and unambiguous meaning of the collective bargaining agreement, we reverse.

NATHANIEL R. JONES, Circuit Judge, concurring in part and dissenting in part.

I agree with the majority's conclusion that the arbitrator could determine the procedural propriety of Thiele's discharge. I disagree with the majority's conclusion that Johnston Boiler followed the procedure set forth in section 10.9 of the collective bargaining agreement. Johnston Boiler's letter of April 30, 1982 states that Thiele's employment was terminated as of that date. Johnston Boiler, therefore, never held pre-discharge grievance meetings. Instead, Johnston Boiler held only post-discharge grievance meetings. Consequently, I would affirm and hold that the arbitrator's award does not depart from the clear and unambiguous meaning of the collective bargaining agreement.