PINKERTON'S NY RACING
SECURITY SERVICE, INC.,
Plaintiff-Appellant,

v.

LOCAL 32E SERVICE EMPLOYEES
INTERNATIONAL UNION,
Defendant-Appellee.

No. 101, Docket 86–7366.

United States Court of Appeals,
Second Circuit.

Argued Sept. 15, 1986.

Decided Nov. 13, 1986.

Bertrand B. Pogrebin, Mineola, N.Y. (Rains & Pogrebin, P.C., of counsel), for plaintiff-appellant.

Irving T. Bush, New York City (Miller and Bush, of counsel), for defendant-appellee.

Before OAKES, MINER and MAHONEY, Circuit Judges.

OAKES, Circuit Judge:

Appeal is from an order affirming an arbitration award in favor of a union and against an employer in reference to overtime pay of a group of employees represented by the union. Pinkerton's New York Racing Security Service, Inc. ("Pinkerton's") brought suit in the United States District Court for the Southern District of New York, Vincent L. Broderick, Judge, under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1982). The arbitration award was by George F. Sabatella, arbitrator, dated May 6, 1985, in favor of Local 32E Service Employees International Union (the "Union"). The award ordered Pinkerton's retroactively to pay its "continuous coverage" security employees one-half hour per day overtime for each day worked under the collective bargaining agreement between the parties covering the period January 1, 1981, to December 31, 1983.

Pinkerton's sought to vacate the award on the grounds that it failed to "draw its

essence," *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960), from the collective bargaining agreement in three respects, the first two procedural and the third substantive. Procedurally it is claimed that in allowing the grievance to proceed to arbitration three and one-half years after the aggrieving act (failure to pay overtime) first occurred, the arbitrator ignored the express 72–hour time limit contained in the agreement's grievance procedure. The second procedural claim is that in finding the dispute arbitrable, the arbitrator ignored the fact that the Union failed to comply with the agreement's express provisions for processing a grievance. The substantive claim is that in holding that the employees were entitled to a half-hour overtime for working eight-hour shifts, the arbitrator ignored the clear agreement between the parties as evidenced by the explicit language of their memorandum of intent and a three and one-half year practice in accordance with that memorandum, as well as by the Union's behavior at subsequent negotiations. On cross-motions for summary judgment Judge Broderick enforced the award in its entirety. We affirm insofar as the substantive and grievance procedure claims are concerned; we remand for further findings in respect to the timeliness claim.

The facts may be briefly stated as follows. Pinkerton's provides security services at racetracks operated by the New York Racing Association. The Union represents the two categories of Pinkerton's employees who provide those services: (1) "racing detail employees" who work when there is racing at the tracks and (2) "continuous coverage employees" who provide round-the-clock coverage even when there is no racing. Round-the-clock coverage traditionally was accomplished by assigning the continuous coverage employees in three eight-hour shifts.

Before 1981 both types of employees received overtime pay after seven and one-half hours of work in a day, thus providing the continuous coverage employees with an automatic one-half hour of overtime on every shift. However, during the latter half of 1980 Pinkerton's began scheduling the continuous coverage employees in daily shifts of seven and one-half hours to reduce overtime expense. During negotiations for the agreement to cover the time period from January 1, 1981, to December 31, 1983, Pinkerton's sought to be able to return to eight-hour shifts without incurring the half-hour per day of overtime liability. It claims to have negotiated an eight-hour day for continuous coverage employees in exchange for a day differential of four percent and a night differential increase of three percent over the rates paid to racing detail employees. According to Pinkerton's, this agreement was incorporated in a memorandum of intent, dated January 12, 1981, which refers to the increased differential pay as being "in exchange for agreeing to increase the work day from 7½ hours to 8 hours." The memorandum, however, did not refer to overtime. In any event, after the memorandum was executed Pinkerton's did not pay the half-hour overtime but did pay the differentials.

Six months after the execution of the memorandum, on June 24, 1981, the parties signed a formal agreement. However, when the agreement was executed paragraph 3(f) read: "[o]vertime at the rate of time and one half shall be paid for all time worked in excess of seven and one-half (7½) hours each day …," making no distinction between racing detail and continuous coverage employees. Throughout the entire duration of the 1981–83 agreement, continuous coverage employees worked in eight-hour daily shifts while receiving the increased differentials but not the overtime. Indeed, when the parties commenced negotiations for a successor agreement, the Union proposed that "[t]he ½ hour overtime should be returned to men working eight hour tours." Pinkerton's did not accede to this proposal. In July 1984 the Union sought an arbitration of its claim that the continuous coverage employees were entitled to a half-hour overtime per day commencing with the inception of the

1981–83 agreement. Hearings were held in early 1985.

Before the arbitrator, Pinkerton's argued that since the grievance was not filed within 72 hours of the event giving rise to it, i.e., the first failure to pay overtime pay in early 1981, section 13(g) of the agreement was applicable, which provides: "Failure to submit grievances within the time specified in this Article, unless mutually extended by the parties hereto, shall be deemed a waiver of all rights with respect thereto." Second, Pinkerton's argued that the dispute was not properly before the arbitrator because the Union brought the grievance directly to arbitration without following the grievance procedure established in section 13(a) of the agreement, whereby a grievance is first to be brought to the Captain of Patrol, then to the Official-in-Charge, then to the Grievance Committee.[1] Third, Pinkerton's argued the substantive point that the memorandum of intent and practice thereafter controlled rather than the express terms of the final collective bargaining agreement.

On May 6, 1985, the arbitrator held in favor of the Union that one-half hour of overtime per day was owed to each continuous coverage employee from the inception of the 1981 collective bargaining agreement. As to the timeliness claim, after referring to the *Steelworkers* trilogy[2] favoring settlement of disputes by the machinery of arbitration and resolving doubts in favor of coverage, *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960), the arbitrator held that the arbitration clause covered any dispute, including one of timeliness, saying:

> When must the parties arbitrate? *"Immediately."* What does immediately mean? Since the parties disagree, it is for the Arbitrator to decide. In making a decision I must look to past practice of the parties. Unrefuted statements show that amicable labor relationships between the parties was [*sic*] enhanced since there apparently wasn't strict adherence to the contractual procedures. Therefore, I find that for this particular set of circumstances and based upon the facts adduced in the instant situation, the provisions of the Collective Bargaining Agreement were reasonably met.

Accordingly, he held that the issue had been presented in a timely and proper fashion. The arbitrator did not mention the grievance procedure claim.

## DISCUSSION

*Steelworkers* held, inter alia, that an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement.

---

1. Section 13(a) provides:

A Grievance Committee of four (4), two (2), to be appointed by Pinkerton's and two (2) to be appointed by the Union, who shall be called Shop Stewards, is hereby created. All grievances by the Union, of any nature whatsoever, must be submitted in writing to the Captain of the Patrol within seventy-two (72) hours after the occurrence of the event, exclusive of Sundays. If he is unable to settle the grievance within forty-eight (48) hours after the receipt thereof, the Captain of the Patrol must refer it to the Official-in-Charge, who shall have forty-eight (48) hours in which to attempt a settlement thereof. If the Official-in-Charge is unable to settle the grievance, it must be submitted in writing to the Grievance Committee within seventy-two (72) hours and said Grievance Committee must, within four (4) days, exclusive of Sundays and Holidays, after receipt of said written notice of a grievance, conduct a hearing, notice of which must be given in writing to Pinkerton's and the Union at least forty-eight (48) hours prior thereto unless so extended by mutual agreement of the parties hereto, at which representatives of Pinkerton's and the Union shall be heard.

2. *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Co.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); *see also Torrington Co. v. Metal Products Workers Union Local 1645*, 362 F.2d 677 (2d Cir.1966). This court has put the gloss on the *Steelworkers* trilogy that "an arbitration award will not be vacated when the arbitrator explains his decision 'in terms that offer even a barely colorable justification for the outcome reached....' " *Meyers v. Parex, Inc.*, 689 F.2d 17, 18 (2d Cir.1982) (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir.1978)); *accord Advance Publications, Inc. v. Newspaper Guild of New York, Local 3*, 616 F.2d 614, 617 (2d Cir.1980). The district court found in all respects that the arbitration here "did offer a barely colorable justification." Even though the arbitrator did not spell out his reasons in respect to the substantive claim made, unlike the arbitrations upheld in *Meyers* and *Advance Publications*, or *e.g.*, *Wire Service Guild, Local 222 v. United Press International, Inc.*, 623 F.2d 257 (2d Cir.1980), here there was express language in the contract, section 3(f), that provided for the payment of overtime irrespective of the kind of employee. There was also no express language in the memorandum of intent to the opposite effect even though the increased differentials were said to be in exchange for the continuous coverage employees working an eight-hour, rather than a seven and one-half hour, shift. To be sure, the employees were in fact paid without the inclusion of overtime, but our cases have time and again held, following Supreme Court guidelines, that even if an arbitral award is based upon an erroneous interpretation of a contract, the award will not be reversed where it is not manifestly in disregard of applicable law. *See, e.g., Siegel v. Titan Industrial Corp.*, 779 F.2d 891, 892–93 (2d Cir.1985); *I/S Stavborg v. National Metal Converters, Inc.*, 500 F.2d 424, 432 (2d Cir.1974). It surely cannot be said that the substantive decision does not "draw its essence" from the parties' agreement or that the arbitrator did not provide a "barely colorable justification" for his holding.

Although the arbitrator did not refer to the grievance procedure argument based upon section 13(a) of the contract, it seems plain to us that a grievance procedure which is obviously established to handle individual grievances is not necessary for a grievance so basic to a group of employees as whether overtime shall be paid. It borders on the absurd to suggest that the Union should have to go through the three-step submission, first to the Captain of the Patrol, then to the Official-in-Charge, and then to the Grievance Committee. Pinkerton's argues that at least if the Union had proceeded through the three stages, communication as to the relative positions of the parties would have been promoted. While that may be true, and while the language of section 13(a) is broad, referring to "[a]ll grievances ... of any nature whatsoever," it surely does not cover a basic wage dispute covering a class of employees. We presume, as did the district court, that the arbitrator by rendering a decision on the merits decided that the failure to follow these procedures does not bar arbitration. Clearly the arbitrator need not set forth all of the reasons for his award. *See Local 771, I.A.T.S.E. v. RKO General*, 546 F.2d 1107 (2d Cir.1977).

We have more difficulty however with the timeliness argument. The arbitrator, by referring to "immediately," demonstrates that he either had not read the contract, which does not use the term at all, or was using a rather peculiar euphemism for the submission periods referred to in the grievance section of the agreement, section 13(a). The district court felt that the "essence of agreement" test was satisfied if the issue of timeliness was considered by the arbitrator. Here the issue in general surely was considered, but judging from what the arbitrator said, he was not considering the particulars of the agreement at all. He did look to "past

practice of the parties," saying that "[u]nrefuted statements show that amicable labor relationships between the parties was [*sic*] enhanced since there apparently wasn't strict adherence to the contractual procedures." Nothing in the record, however, indicates that there was anything presented to the arbitrator in regard to past practices. Surely his language that there "apparently" was not strict adherence is not a "barely colorable justification" for a finding that a mutual waiver of the timeliness provisions existed or would extend to cover a three and one-half year delay.

One would suppose that even if submission within the hours referred to in section 13(a) were not required, submission within a reasonable time would be necessary. What is a reasonable time would depend on past practices. Since the arbitrator had nothing before him—though we do not know what the "unrefuted statements" were—it seems plain that a resubmission to the arbitrator of the issue, "What is a reasonable time?" is proper. *Cf. Industrial Mutual Association, Inc. v. Amalgamated Workers, Local Union No. 383*, 725 F.2d 406, 412–13 (6th Cir.1984) (remanding issue of back pay to arbitrator); *American Federation of State, County and Municipal Employees, Local Lodge No. 1803*, 715 F.2d 1517, 1519 (11th Cir.1983) (per curiam) (remanding to arbitrator for clarification of award); *Refino v. Feuer Transportation, Inc.*, 480 F.Supp. 562, 567 (S.D.N.Y.1979) (remanding question whether further relief warranted), *aff'd*, 633 F.2d 205 (2d Cir. 1980) (unpublished opinion). The dispute here continued during the entire period of the contract. Thus, the Union can recover for that part of the contract period that falls within a "reasonable time" prior to the filing of the intent to arbitrate. If a reasonable time is one year, retroactive overtime pay could be ordered only for that part of the contract period falling within a period of one year prior to filing the intent to arbitrate. If a reasonable time is eighteen months, overtime pay could be awarded only for the contract period falling within the previous eighteen months. If it is

three months, the same holds true, and if it is three and one-half years, the same result follows.

The judgment of the district court as to the grievance procedure claim and the issue of overtime pay is affirmed. The judgment as to the issue of timeliness is reversed and remanded to the district court with instructions to remand the issue of what is a reasonable time to the original arbitrator, or, if the original arbitrator is unavailable, to a substitute arbitrator as agreed to by the parties.