HARRY HOFFMAN PRINTING, INC., Holling Press (Ward Burns, Inc.), Pollack Printing Corp., Manhardt–Alexander, Inc., Thorner–Sidney Press, Inc., Kenworthy Graphic Services, Inc., Savage Litho Company, Inc., constituting the Sole and Exclusive Members of the Litho Negotiating Group, Petitioners–Appellees,

v.

GRAPHIC COMMUNICATIONS INTERNATIONAL UNION, LOCAL 261 (formerly Graphic Arts International Union, Local 261), Respondent–Appellant.

No. 1877, Docket 91–7389.

United States Court of Appeals, Second Circuit.

Argued Aug. 14, 1991.

Decided Nov. 27, 1991.

E. Joseph Giroux, Jr., Buffalo, N.Y., for respondent-appellant.

Nicholas J. Fiorenza, Syracuse, N.Y. (Walter D. Kogut, Scolaro, Shulman, Cohen, Lawler & Burstein, P.C., of counsel), for petitioners-appellees.

Before MINER, WALKER and McLAUGHLIN, Circuit Judges.

MINER, Circuit Judge:

Respondent-appellant Graphic Communications International Union, Local 261 ("Union" or "Local 261") appeals from a judgment entered on March 28, 1991 in the United States District Court for the Western District of New York (Elfvin, *J.*) granting the petition of petitioners-appellees Harry Hoffman Printing, Inc., Holling Press (Ward Burns, Inc.), Pollack Printing Corp., Manhardt–Alexander, Inc., Thorner–Sidney Press, Inc., Kenworthy Graphic Services, Inc., and Savage Litho Company, Inc. (collectively, "Employers") to vacate an arbitral award, pursuant to 9 U.S.C. § 10 (1988) and 29 U.S.C. § 185 (1988). The Employers are printing companies and, together, they comprise the membership of the Litho Negotiating Group. The Litho Negotiating Group represents the Employers in labor negotiations with employee unions, including Local 261.

On appeal, Local 261 contends that the arbitration panel did not exceed its authority under the collective bargaining agreement when it concluded that employees honoring the picket lines of a sister union were entitled to notice before being permanently replaced. We hold that the arbitral decision imposing the notice requirement on the Employers did not draw its essence from the collective bargaining agreement. Accordingly, we affirm the judgment of the district court.

## BACKGROUND

On July 29, 1983, after a collapse in negotiations over a new collective bargain-

ing agreement, members of the Graphic Communications International Union, Local 17B ("Local 17B"), a bookbinders' local, went on strike against several of the Employers. The Union, a lithographers' local, honored the picket lines of Local 17B, and approximately 150 Union members did not report to work. During the course of the strike, the Employers hired sixty-six workers to replace permanently Union members who honored the picket lines. Thirty-four of the permanent replacement workers were hired on or before October 1, 1983, the date on which the collective bargaining agreement ("CBA") between the Union and the Employers expired.

After the Local 17B strike concluded on October 15, 1983, the Union informed the Employers that all its members were willing to return to work. The Employers advised the Union that sixty-six employees had been replaced permanently, although the employees who had not been replaced would be allowed to return. On October 17, 1983, the Union filed a grievance, claiming that the permanent replacement of the employees violated the CBA. After the Employers indicated that they did not believe the grievance was arbitrable, the Union filed unfair labor practice charges against the Employers with the National Labor Relations Board ("NLRB"). The NLRB regional director concluded that there was insufficient evidence to support the Union's charge.

The Union then filed a demand for arbitration with the American Arbitration Association, pursuant to the arbitration provision of the CBA. The Employers petitioned the district court for a stay of the arbitration and the Union filed a cross-motion to compel the arbitration. On January 31, 1985, the district court granted the Union's motion and this Court affirmed.

In August and November of 1987, hearings were held before a panel of three arbitrators (the "Panel"). Two issues were presented to the Panel. The first issue was "whether the matter is arbitrable in whole or in part, in light of all the relevant facts developed in the record." The Panel decided that the dispute was arbitrable, a conclusion which is not contested in this appeal.

The second issue presented to the Panel was "whether the Employers violated Section 39.1 of the [CBA], in whole or in part, when they permanently replaced certain employees represented by Local 261." Section 39.1 provided,

The employer agrees that any employee may, at his own discretion, refuse to pass through any lawful primary picket line established at his plant when an authorized strike against the employer is in effect. Such act shall not be deemed a breach of contract, nor shall the Employer discharge, discipline or otherwise discriminate against such employee.

The Panel determined that the Union had encouraged its members to honor the Local 17B picket line and that the members did not act at their individual discretion. The Panel found that "the failure [of Union members] to report to work ... was ... concerted activity unprotected by Section 39.1." Thus, the employees had violated Section 4.2 of the CBA, which provided: "The Union will not conduct or authorize ... interference with production, during the term of this Agreement."

However, the Panel went on to state that "elementary due process requires that persons whose actions colorably threaten their livelihood and who may face replacement if their action continues must be given notice of the possible consequences of what they are doing." It noted that "one of the primary purposes of a labor agreement is to furnish ... some measure of job security," and that permanent replacement was "akin to discharge" and within the prohibition of Section 39.1 against "otherwise discriminat[ing] against [an] employee." The Panel concluded that the Employers' "failure to give notice of the impending 'permanent replacements' violated the fundamental right of due process inherent in the terms of Section 39.1." The Panel sustained the grievances with respect to the thirty-four employees who were "permanently replaced" on or before the date of expiration of the CBA, and denied the grievances with respect to the thirty-two employees perma-

nently replaced after expiration. Because "[t]he parties specifically retained control over the remedy in the event the grievance should be sustained," the Panel left the determination of damages to the parties.

The Employers petitioned in federal court for the Western District for vacatur of the award, pursuant to 9 U.S.C. § 10 and 29 U.S.C. § 185, on the ground that the Panel exceeded its authority under the CBA. On November 1, 1989, the district court dismissed the petition for untimeliness, but, in a decision dated August 31, 1990, this Court vacated and remanded. On remand, the district court granted the petition to vacate the award. In his decision of March 25, 1991, Judge Elfvin held that the provisions of the CBA precluded the Panel's award and the Panel had exceeded its authority in imposing a notice requirement.

## DISCUSSION

■ For purposes of avoiding industrial strife, settled national policy holds that voluntary arbitration under a collective bargaining agreement is the preferred method of resolving disputes between labor and management. *See United Steelworkers of Am. v. American Mfg. Co.*, 363 U.S. 564, 565, 80 S.Ct. 1343, 1345, 4 L.Ed.2d 1403 (1960); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 577–78, 80 S.Ct. 1347, 1350–51, 4 L.Ed.2d 1409 (1960); *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). The decision of an arbitration panel hearing such a dispute receives limited review: " 'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.' " *Leed Architectural Prods., Inc. v. United Steelworkers of Am., Local 6674*, 916 F.2d 63, 65 (2d Cir.1990) (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987)). This deferential standard of review does not, however, amount to a grant of unlimited power to the arbitrator, whose authority is not only " 'derived from, [but] limited by, the collective-bargaining agreement.' " *Id.* at 66 (quoting *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 744, 101 S.Ct. 1437, 1446–47, 67 L.Ed.2d 641 (1981)). "[A]n arbitrator's award must 'draw[ ] its essence from the collective bargaining agreement,' and the arbitrator is not free merely to 'dispense his own brand of industrial justice.' " *In re Marine Pollution Serv., Inc.*, 857 F.2d 91, 94 (2d Cir.1988) (quoting *Enterprise Wheel & Car*, 363 U.S. at 597, 80 S.Ct. at 1361). Where "it is clear that the arbitrator 'must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract (and not incorporated in it by reference),' " the arbitral award cannot stand. *Id.* (quoting *Ethyl Corp. v. United Steelworkers*, 768 F.2d 180, 184–85 (7th Cir.1985), *cert. denied*, 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986)) (emphasis in original).

The Panel determined that the employees' conduct was not protected by Section 39.1, and violated Section 4.2. Clearly, this part of the decision was based on the CBA. However, we conclude that the Panel's further determination, that due process required notice to the employees that their conduct opened them to the possibility of permanent replacement, was not "drawn from the essence" of the CBA.

■ Merely because an arbitral decision is not based on the express terms of a collective bargaining agreement does not mean that it is not properly derived from the agreement. An arbitrator "is entitled to take cognizance of contract principles" and draw on them for guidance in construing an agreement. *GK Mgt. Inc. v. Local 274, Hotel Employees & Restaurant Employees Union*, 930 F.2d 301, 304 (3d Cir. 1991) (arbitral decision construing timeliness provision based on principles of waiver and estoppel); *see also Enterprise Wheel & Car*, 363 U.S. at 596 & n. 2, 80 S.Ct. at 1360–61 n. 2 (arbitrator may consider industry custom and practices in interpreting terms of agreement); *Pinkerton's NY Racing Sec. Serv., Inc. v. Local*

*32E Serv. Employees Int'l Union*, 805 F.2d 470, 473–74 (2d Cir.1986) (arbitrator may consider parties' past practices). Neither a misapplication of principles of contractual interpretation nor an erroneous interpretation of the agreement in question constitutes grounds for vacatur. *See Misco*, 484 U.S. at 38, 108 S.Ct. at 370–71; *Pinkerton's*, 805 F.2d at 473.

■ Here, it is unmistakable that, in reaching its decision, the Panel did not merely misapply principles of contractual interpretation or misinterpret the CBA, but drew upon a concept upon which it was not entitled to rely. The Panel based its conclusion on the concept of "elementary due process." Neither Section 4.2 nor 39.1, the only provisions discussed by the Panel in concluding that notice was necessary, provide for such a broad concept as "due process." Similarly, the CBA, taken as a whole, does not evince any intention on the part of the parties to endow an arbitration panel with expansive, equitable discretion. The record reveals that no evidence was presented to the Panel of industry customs or past practices of the parties which would indicate a due process requirement inherent in the CBA. Thus, we conclude that the arbitral decision is not based on express or properly-implied terms, but rather was improperly based upon the Panel members' particular notions of industrial justice. *See St. Louis Theatrical Co. v. St. Louis Theatrical Bhd. Local 6 of the Int'l Alliance of Theatrical Stage Employees & Moving Pictures Operators*, 715 F.2d 405, 409 (8th Cir.1983) (award vacated where "arbitrator's opinion reflected … [his] efforts to balance the equities of the situation, rather than to interpret and apply the agreement").

Although we reject the Union's contention that the arbitral opinion demonstrates that the Panel's decision was derived from the CBA, we note that other sections of the CBA provide at least some support for a notice requirement. Under Section 9.8, "[a]ny employee, who has been on the payroll for 45 days or more and who is discharged for any cause other than disorderly conduct, shall be entitled to and receive one week's prior notice in writing, … or to one week's pay in lieu thereof." Similarly, Section 4.2 provides that "[i]n the event of any unauthorized [activity by employees], the Union, within twenty-four (24) hours after written notification of the existence of the situation from the Employer, shall … take … reasonable action … [to] end[ ] the unauthorized conduct." However, Sections 4.2 and 9.8 establish a type of notice different from that conceived of by the Panel, because neither satisfies the Panel's concern that employees "must be given notice of the possible consequences of what they are doing." Under Section 9.8, an employer has the option of giving a week's pay in lieu of notice upon discharge. Section 4.2 places on the employer no affirmative duty to notify; rather, notice serves to trigger the Union's duty to act. The notice required by the Panel presumably would provide the notified employees with the opportunity to return to work before they were replaced.

In any event, the Panel did not in fact base any part of its decision on either Section 9.8 or the notice clause of Section 4.2. Nowhere in the comprehensive, detailed arbitral opinion is the former section mentioned, and the latter section is cited only in the description of the factual background of the dispute. It is true that the Panel was not required to "set forth all of the reasons for [its] award," *Pinkerton's*, 805 F.2d at 473, and, " 'if a ground for the … decision can be inferred from the facts of the case, the award should be confirmed,' " *see Fahnestock & Co. v. Waltman*, 935 F.2d 512, 516 (2d Cir.1991) (quoting *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1216 (2d Cir.1972)). However, we cannot simply ignore the arbitral opinion. *See Ottley v. Sheepshead Nursing Home*, 688 F.2d 883, 891–92 & n. 2 (2d Cir.1982) (Newman, *J.*, concurring) (because of arbitrator's "explicit statement" of exclusive basis for decision, judicial review must focus on that reasoning). We therefore conclude that the Panel drew the basis for its decision entirely from improper, extracontractual sources, rather than from the CBA. *See Marine Pollution*, 857 F.2d at 94.

Moreover, the CBA, from which the Panel derived its power, contains express limitations on the authority of the Panel. Article 6 provides, "Nothing in this contract shall be construed as requiring either party hereto to do or refrain from doing anything not explicitly and expressly set forth in this contract." Similarly, Article 5 provides, "Neither the grievance procedure nor the arbitration shall add to, alter, amend, modify, or subtract from the provisions of this agreement." Arbitrators may imply terms or fill gaps in an agreement, but a "no modification" clause prohibits them from creating entirely new terms. *See Ethyl Corp.*, 768 F.2d at 186; *cf. Marine Pollution*, 857 F.2d at 96. Although we recognize that, "as a practical matter," the distinction between a properly-implied term and a term created by the arbitrators may be "tenuous," *Ethyl Corp.*, 768 F.2d at 186, it is undeniable that the notice requirement in this case had its origins in the Panel members' subjective notions of a fair labor contract. To uphold an arbitral decision that is predicated explicitly and exclusively on non-contractual concepts and that effectively imposes a condition not bargained for by the parties would render the limiting sections of the CBA superfluous. *See Georgia–Pacific Corp. v. Local 27, United Paperworkers Int'l Union*, 864 F.2d 940, 946 (1st Cir.1988) ("To allow the arbitrator to ignore . . . explicit language . . . by substituting 'his own brand of industrial justice' for that agreed to by the parties" would "do violence" to the no modification clause).

The Union cites *Chauffeurs, Teamsters & Helpers Local No. 878 v. Coca–Cola Bottling Co.*, 613 F.2d 716 (8th Cir.), *cert. denied*, 446 U.S. 988, 100 S.Ct. 2975, 64 L.Ed.2d 847 (1980), which held that an arbitral decision based on procedural due process was "drawn from the essence" of the collective bargaining agreement. In *Coca–Cola*, the arbitrator's finding of an implicit due process requirement was derived from a provision regulating discharge for "just cause." *Id.* at 717–19; *see also Federated Dep't Stores v. United Food & Commercial Workers Union, Local 1442*, 901 F.2d 1494, 1497 (9th Cir.1990) ("because it is not unusual for an arbitrator to apply due process notions to just cause, the arbitrator derived his decision from the essence of the collective bargaining agreement"); *Johnston Boiler Co. v. Local Lodge No. 893, Int'l Bhd. of Boilermakers*, 753 F.2d 40, 43 (6th Cir.1985) (same); *Anaconda Co. v. District Lodge No. 27 of the Int'l Ass'n of Machinists*, 693 F.2d 35, 37 (6th Cir.1982) (affirming arbitral decision that clause providing "employees shall be treated fairly and justly by the Company" included due process requirement). By contrast, the Panel here did not derive its decision from such broad, contractual language, but found a right of due process inherent in Section 39.1. *Cf. Cement Divs., Nat'l Gypsum Co. v. United Steelworkers of Am., AFL–CIO–CLC, Local 135*, 793 F.2d 759, 767 (6th Cir.1986) (similar conclusion wrongfully derived from sources other than the agreement or industry custom). Section 19.1 of the CBA provided that "[n]o employee may be disciplined or discharged except for just cause." However, the parties did not frame their dispute with reference to that provision as the parties in *Coca–Cola* framed their dispute with reference to a similar provision. Rather, the parties here agreed that the issue to be decided in arbitration simply was whether the Employers violated Section 39.1. The Panel's decision nowhere refers to section 19.1, and the due process requirement is implied from Section 39.1 alone. Moreover, there is no indication in the record that Section 19.1 was raised in, or considered by, the district court. We therefore need not consider whether we should adopt the rule announced in *Coca–Cola* or apply it in this case.

## CONCLUSION

The judgment of the district court vacating the arbitral award is affirmed.