LOCAL 391, COUNCIL 4, AFSCME, AFL-CIO *v.*
DEPARTMENT OF CORRECTION ET AL.
(AC 22577)

Foti, Dranginis and West, Js.

Argued January 15—officially released April 1, 2003

*J. William Gagne, Jr.*, with whom, on the brief, was *P. Jo Anne Burgh,* for the appellant (plaintiff).

*Thomas P. Clifford III,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellees (defendants).

*Opinion*

WEST, J. The plaintiff, Local 391, Council 4, American Federation of State, County and Municipal Employees, AFL-CIO, appeals from the judgment of the trial court denying its application to vacate an arbitration award. The plaintiff claims that the court improperly denied the application to vacate the arbitration award because the arbitrator allegedly had exceeded his powers or so imperfectly executed them that a mutual, definite and final award on the subject matter was not made.[1] The plaintiff specifically claims that the court improperly held that the arbitration award drew its essence from the parties' collective bargaining agreement. We disagree and affirm the judgment of the trial court.

The following facts are relevant to our disposition of the plaintiff's appeal. Since 1979, the plaintiff and the

---

[1] Initially, the plaintiff also claimed that the application to vacate should have been granted because the arbitration award violated the public policy expressed in General Statutes §§ 5-272 (c) and 5-278 (e). In its reply brief to this court, however, the plaintiff withdrew that claim.

defendant department of correction[2] have been parties to several consecutive collective bargaining agreements governing wages, hours and other conditions of employment. On June 30, 1994, the then extant collective bargaining agreement expired, and the parties were unable to reach an accord with respect to a successor agreement. The parties agreed to extend the terms of the recently expired agreement until a successor agreement could be ratified. Article forty-three of the collective bargaining agreement requires any employee who is absent due to illness for five or more consecutive workdays to submit a medical certificate stating the reasons for the absence.

The parties subsequently engaged in binding interest arbitration to settle the unresolved contract issues. A binding arbitration award was issued in April, 1997, setting forth the arbitration panel's decisions concerning contractual provisions for the period 1994 through June 30, 1999. The Senate of the Connecticut General Assembly rejected that award.

Following the Senate's action, several newspaper articles were written speculating about the possibility of a strike or other work action, such as a "sick-out." As a result of that speculation, the defendant implemented a policy requiring all employees who called in sick, regardless of the duration of their absence, to produce a medical certificate substantiating the validity of their absence. Failure to submit the required certificate would result in the nonpayment of wages for the period of the absence.

Certain members of the plaintiff bargaining unit were disciplined in conformity with the newly implemented policy, and the union filed a grievance challenging the

[2] John J. Armstrong, the commissioner of correction, also is a defendant. We refer in this opinion to Armstrong and the department of correction collectively as the defendant.

policy as inconsistent with the terms of the collective bargaining agreement.[3] After complying with the contractual grievance and arbitration steps, the parties jointly submitted to the arbitrator the following issue: "Did the State violate Article 43 of the NP4 collective bargaining agreement when on or about May 16, 1997 the administration required employees to submit medical certificates for absences of less than 5 days? If so, what shall the remedy be consistent with the contract?" In its award, issued on October 7, 2000, the arbitrator found that the state did not violate article forty-three of NP-4 collective bargaining agreement and concluded that no remedy was warranted.

On October 26, 2000, the plaintiff filed an application to vacate the award. Following a hearing on July 30, 2001, the court, on August 10, 2001, denied the plaintiff's application to vacate the award. This appeal followed.

"The scope of review by the court of an arbitrator's power to make an award is limited. Arbitration is a creature of contract between the parties and its autonomy requires a minimum of judicial intrusion. . . . The parties themselves, by the agreement of the submission, define the powers of the arbitrator. . . . The submission constitutes the charter of the entire arbitration proceedings and defines and limits the issues to be decided. . . . When the parties have agreed to a procedure and have delineated the authority of the arbitrator, they must be bound by those limits. . . . An application to vacate or correct an award should be granted where an arbitrator has exceeded his power. In deciding whether an arbitrator has exceeded his power, we need only examine the submission and the award to determine whether the award conforms to the submission."

---

[3] Although the grievance was unsuccessful, the disciplined union members substantially were made whole in connection with the eventual settlement of a new collective bargaining agreement. The plaintiff, however, also wanted the defendant to cease and desist enforcement of the sick leave policy.

(Internal quotation marks omitted.) *Hartford* v. *International Assn. of Firefighters, Local 760,* 49 Conn. App. 805, 811–12, 717 A.2d 258, cert. denied, 247 Conn. 920, 722 A.2d 809 (1998).

"[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." (Internal quotation marks omitted.) *Hudson Wire Co.* v. *Winsted Brass Workers Union,* 150 Conn. 546, 553, 191 A.2d 557 (1963).

"Merely because an arbitral decision is not based on the express terms of a collective bargaining agreement does not mean that it is not properly derived from the agreement. An arbitrator is entitled to take cognizance of contract principles and draw on them for guidance in construing an agreement. . . . Neither a misapplication of principles of contractual interpretation nor an erroneous interpretation of the agreement in question constitutes grounds for vacatur." (Citations omitted; internal quotation marks omitted.) *Harry Hoffman Printing, Inc.* v. *Graphic Communications International Union, Local 261,* 950 F.2d 95, 98–99 (2d Cir. 1991).

The plaintiff argues that the arbitration award should have been vacated because the arbitrator, in reaching his determination, improperly relied on a state regulation that was superseded by article forty-three of collective bargaining agreement. See General Statutes § 5-278 (e) (where terms of collective bargaining agreement are inconsistent with terms of regulation, agreement prevails). The plaintiff interprets article forty-three as

absolutely restricting the state from requiring medical certificates except on an employee's absence from work of more than five consecutive workdays. The plaintiff contends that the arbitration award is, therefore, illegitimate because it does not draw its essence from the collective bargaining agreement. See *Darien Education Assn.* v. *Board of Education*, 172 Conn. 434, 437, 374 A.2d 1081 (1977).

Arbitration awards, however, are not to be invalidated merely because they rest on an allegedly erroneous interpretation or application of the relevant collective bargaining agreement. *Local 1042, Council 4, AFSCME, AFL-CIO* v. *Board of Education*, 66 Conn. App. 457, 462, 784 A.2d 1018 (2001); *Harry Hoffman Printing, Inc.* v. *Graphic Communications International Union, Local 261*, supra, 950 F.2d 98–99. Rather, in determining whether the arbitration award draws its essence from the collective bargaining agreement, the reviewing court is limited to considering whether the collective bargaining agreement, rather than some outside source, is the foundation on which the arbitral decision rests. *Harry Hoffman Printing, Inc.* v. *Graphic Communications International Union, Local 261*, supra, 98–99. If that criterion is satisfied, as it is in the present case, then we cannot conclude that the arbitrator exceeded his authority or imperfectly executed his duty.

A review of the arbitration award reveals that the arbitrator conscientiously interpreted the collective bargaining agreement in deciding whether the defendant had violated any term therein. The arbitrator cited to the relevant provisions of the collective bargaining agreement on which he was relying. Specifically, he referenced articles thirty-two, entitled "insurance and leaves," and forty-three, entitled "sick leave/medical certificates," of the collective bargaining agreement. Article thirty-two states in relevant part: "Except where

varied in this Agreement of this Article, the State will continue in force its written rules and regulations presently in effect with reference to: (a) Sick leave . . . ." Article forty-three states: "If an employee is absent for five (5) or more consecutive working days, the employee must submit a medical certificate stating the reasons for the absence. When continued absences from work constitute an abuse of sick leave, the employee and the Union shall be notified in writing. After such notification, the Employer may deny sick pay. Such denial of sick pay is subject to the grievance and arbitration provision of this Agreement. Continued abuse of sick leave will subject the employee to progressive discipline." Section 5-247-11 (a) of the Regulations of Connecticut State Agencies provides: "An acceptable medical certificate, which must be on the form prescribed by the Commissioner of Personnel and Administration and signed by a licensed physician or other practitioner whose method of healing is recognized by the state, will be required of an employee by his appointing authority to substantiate a request for sick leave for the following reasons: (1) Any period of absence consisting of more than five consecutive working days; (2) To support request for sick leave of any duration during annual vacation; (3) Leave of any duration if absence from duty recurs frequently or habitually provided the employee has been notified that a certificate will be required; (4) Leave of any duration when evidence indicates reasonable cause for requiring such a certificate."

The plaintiff argues that article forty-three supersedes § 5-247-11 of the regulations in its entirety and that the plain language of that article prohibits the defendant from conditioning the requirement of a medical certificate on any circumstance other than an employee's absence from work for five or more consecutive days. The plaintiff further argues that in finding

that the defendant was justified in requiring medical certificates for absences fewer than five days in duration, the arbitrator improperly modified or altered the collective bargaining agreement.

We cannot conclude that the arbitrator, in looking to both the collective bargaining agreement and a regulation incorporated by reference in that agreement, exceeded or imperfectly executed his powers. See *Ethyl Corp.* v. *United Steelworkers of America*, 768 F.2d 180, 184–85 (7th Cir. 1985), cert. denied, 475 U.S. 1010, 106 S. Ct. 1184, 89 L. Ed. 2d 300 (1986). In interpreting collective bargaining agreements, arbitrators are entitled to apply relevant principles of contract interpretation. *Harry Hoffman Printing, Inc.* v. *Graphic Communications International Union, Local 261*, supra, 950 F.2d 98. "Generally, incorporation by reference of existing documents produces a single contract which includes the contents of the incorporated papers. . . . When parties execute a contract that clearly refers to another document, there is an intent to make the terms and conditions of the other document a part of their agreement, as long as both parties are aware of the terms and conditions of the second document." (Internal quotation marks omitted.) *Lussier* v. *Spinnato*, 69 Conn. App. 136, 141, 794 A.2d 1008, cert. denied, 261 Conn. 910, 806 A.2d 49 (2002).

In the present case, there is nothing inherently inconsistent between the arbitration award and the terms of the collective bargaining agreement. As previously stated, article thirty-two states in relevant part that "[e]*xcept where varied in this Agreement . . . the State will continue in force its written rules and regulations presently in effect with reference to: (a) Sick leave . . . .*" (Emphasis added.) Section 5-247-11 (a) of the regulations allows a state employer to require a medical certificate to substantiate requested sick leave in four different circumstances, including: "(1) Any

period of absence consisting of more than five consecutive working days . . . (4) Leave of any duration when evidence indicates reasonable cause for requiring such a certificate."

Article forty-three of the collective bargaining agreement varies the applicability of § 5-247-11 (a) (1) of the regulations by requiring the presentation of a medical certificate upon an absence of *five or more* consecutive working days, rather than upon an absence of *more than five* consecutive workdays. Article forty-three further provides for the denial of sick pay only after notification to the employee and the union that such absences constitute an abuse of sick leave, and makes such denial of sick pay subject to the collective bargaining agreement's grievance and arbitration provision. Under article forty-three, continued abuse of sick leave will subject the employee to progressive discipline. Article forty-three is silent, however, with respect to the other circumstances controlled by the regulation.

In coming to his conclusion, the arbitrator interpreted article thirty-two as continuing in force the relevant state regulations pertaining to sick leave that were not specifically amended or abrogated by article forty-three of the collective bargaining agreement. Because article forty-three makes no reference to three of the four regulatory circumstances giving rise to a required medical certificate pursuant to § 5-247-11 (a) of the regulations, the arbitrator concluded that those conditions remained valid under the collective bargaining agreement. Given the parties' lack of success in negotiating a successor collective bargaining agreement and the media speculation regarding the possibility of a "sick-out," the arbitrator found that § 5-247-11 (a) (4) of the regulations was satisfied in that the state had "reasonable cause" to require a medical certificate under the circumstances.[4]

---

[4] In that portion of his decision titled "closing," the arbitrator stated in relevant part: "Circumstances from May 7, [1997] to May 16, [1997] were

It is not our role to determine whether the arbitrator's interpretation of the collective bargaining agreement was correct. It is enough to uphold the judgment of the court, denying the plaintiff's application to vacate the award, that such interpretation was a good faith effort to interpret the terms of the collective bargaining agreement. On the basis of the foregoing, we conclude that it was.

The judgment is affirmed.

In this opinion the other judges concurred.

complex, worrisome and vexatious. There were concerns about strikes and job actions. The remarks of union officials were guarded and circumspect. There were prison facilities which went into lockdown status during this anxiety producing period. [Certain members], the first guards to respond to an emergency, riot or an escape at facilities, turned in their equipment, not a contractually prohibited action. Connecticut state police declared support for the guards and said it would respond to prison emergencies. Strike fears produced employee dismissal threats. It was noted in state exhibit 1-6 that prison guards had gone on strike in 1977 although it was illegal for public employees to do so. One observation in state exhibit 1-8 was that there were 5000 people represented by the union, and 'it is hard for union members to control everyone.' "