CITY OF NEW HAVEN *v.* AFSCME,
COUNCIL 15, LOCAL 530
(AC 28321)

Flynn, C. J., and McLachlan and Beach, Js.

Argued January 8—officially released April 1, 2008

*Patricia A. Cofrancesco*, with whom, on the brief, was *Kenneth DeLorenzo*, for the appellant (defendant).

*Laoise King*, assistant corporation counsel, for the appellee (plaintiff).

*Opinion*

FLYNN, C. J. The issue raised in this appeal is whether the trial court properly granted an application to vacate an arbitration award sustaining a grievance by a New Haven police officer. The defendant, AFSCME, Council 15, Local 530, appeals from the judgment of the trial court denying its motion to confirm the arbitration award and granting the application of the plaintiff, the city of New Haven, to vacate the award. On appeal, the defendant claims that in vacating the award, the court improperly concluded that the arbitrator exceeded his authority in rendering the award. We agree with the defendant and reverse the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the appeal. The plaintiff and

the defendant are parties to a collective bargaining agreement that covers the period from July 1, 2004, to June 30, 2008. On November 8, 2004, Elliot Rosa, a patrol officer with the New Haven police department and the union member on whose behalf the defendant commenced the present action, was attacked in an elevator by an assailant wielding a knife. Rosa drew his service weapon and shot and killed the assailant. This incident, which occurred at about the same time as other fatal shootings involving New Haven police officers, spurred a great deal of negative publicity that was directed at the police department and at Rosa.

Immediately after the incident, New Haven police Chief Francesco Ortiz removed Rosa from his assignment as a patrol officer. Rosa was placed on administrative duty, which, unlike the position of a patrol officer, does not present an opportunity for an officer to earn additional income by working overtime hours and extra duty assignments. After receiving assistance from various state agencies, including the state police, Michael Dearington, the state's attorney for the judicial district of New Haven, issued a detailed and comprehensive report to the chief state's attorney about the events of November 8, 2004. In the report, Dearington concluded that Rosa's use of deadly force in causing the victim's death was both reasonable and justified, and Rosa was exonerated of any wrongdoing.

In June, 2005, Charles A. Opsahl, a clinical psychologist, conducted a fitness for duty evaluation of Rosa.[1]

---

[1] In May, 2005, Rosa was evaluated by Mark J. Kirschner, a clinical psychologist. Rosa, however, did not cooperate with Kirschner during the evaluation because Rosa's attorney in a civil lawsuit had advised him not to discuss the November 8, 2004 incident with anyone. After the evaluation, Rosa's attorney informed him that he could discuss the events of November 8, 2004, in a fitness for duty evaluation. The plaintiff and the defendant then agreed to let Rosa participate in another psychological evaluation, which was conducted by Opsahl.

In his July 8, 2005 report, Opsahl stated, inter alia, that "Rosa is ready to resume the duties of a police officer with strong recommendation that he return to some type of psychological counseling . . . ." After Opsahl's fitness for duty evaluation, Rosa refused to participate in counseling, and Ortiz did not permit Rosa to resume his assignment as a patrol officer, keeping him instead on administrative duty.

The defendant filed a grievance on behalf of Rosa following Ortiz' continued refusal to assign Rosa to patrol duty.[2] In accordance with the collective bargaining agreement, the defendant pursued the remedies available through the plaintiff's grievance procedures. The parties failed to resolve the dispute, and, as a result, the matter proceeded to arbitration.[3] In December, 2005, an arbitration hearing was conducted. Because the parties were unable to agree on a submission, they

[2] Article three, § 2, of the collective bargaining agreement provides: "A grievance shall be considered to be a dispute between an employee and/or the Union and the City, and/or any of its agents, servants, employees, officials, boards or commissions concerning the interpretation and application of any of the provisions of this Agreement, including the discharge, suspension, demotion or other discipline of an employee."

[3] Article three, § 4, of the collective bargaining agreement provides in relevant part: "The Union and the City, on behalf of themselves and their agents, servants, employees, officials, boards and commissions, hereby empower and confer upon the Connecticut Board of Mediation and Arbitration and the American Arbitration Association Arbitrator the following powers and authority:

"(a) To interpret and apply the provisions of this Agreement. . . .

"(c) To award the grievance and/or the Union a remedy if it sustains the grievance.

"(d) The Arbitrator(s) jurisdiction to make an award shall be limited by the submission and confined to the interpretation and/or application of the provisions of this Agreement. The Arbitrator(s) shall not have the jurisdiction to make an award which has the effect of amending, altering, enlarging or ignoring the provisions of this Agreement in effect at the time of the occurrence of the grievance being arbitrated, nor shall the Arbitrator(s) have jurisdiction to determine that the parties have amended or supplemented this Agreement, unless such amendment and/or supplemental agreement has, in fact, been made."

decided to empower the arbitrator to frame this issue. The arbitrator then framed the issue as follows: "What shall be the disposition of this grievance?" In their post-hearing arbitration briefs, the plaintiff and the defendant agreed on this statement of the issue.

On March 31, 2006, the arbitrator made various findings, concluding that the plaintiff violated article nineteen,[4] the management rights clause of the collective bargaining agreement. Specifically, the arbitrator determined that the plaintiff unreasonably had exercised its management rights in violation of article nineteen "by continuing Elliot Rosa on Administrative Duty (including continuation of his ineligibility for overtime and Extra Duty work) beyond July 8, 2005," the date on which Opsahl issued his fitness for duty report. The arbitrator issued the following remedy: "(1) Upon receipt of this award the [plaintiff] shall remove Rosa from Administrative Duty and assign him to his regular patrol duties including his normal schedule and restore his eligibility for overtime and extra duty. (2) Retroactive to July 8, 2005 the [plaintiff] shall pay to Rosa $1,667 per month back pay, prorated for any partial month."

On April 28, 2006, the plaintiff filed an application in the trial court to vacate[5] the arbitration award.[6] See

---

[4] Article nineteen of the collective bargaining agreement provides: "Except where the right of the employer to direct the work force is specifically relinquished, modified, or abridged by the terms of this Agreement or the State of Connecticut Municipal Employee Relations Act, the City shall have and retain the exclusive right to exercise all functions of management including, but not limited to directing the activities of the Department, determining the levels of service and methods of operation and the introduction of new equipment, the right to hire, layoff, transfer and promote, to discharge and otherwise discipline employees for just cause, to determine work schedules and assign work."

[5] We note that the plaintiff never challenged the arbitrability of the subject matter of the grievance.

[6] In its application to vacate the arbitration award, the plaintiff claimed that the arbitrator had exceeded his powers and that the award violated public policy. The court granted the plaintiff's application to vacate, concluding that the arbitrator had exceeded his authority. The court did not address

General Statutes § 52-418.[7] Thereafter, the defendant filed a motion to confirm the award. See General Statutes § 52-417.[8] Following a hearing, the court issued a memorandum of decision vacating the arbitration award on the ground that the arbitrator exceeded his authority in finding a violation of article nineteen of the collective bargaining agreement. The court determined that the arbitrator improperly had encroached on the exclusive right of management to assign work and that "[e]ven if the [plaintiff's] decision was ultimately unwise or overly cautious, it was a determination entirely within the discretion of the management of the police department." The court also denied the defendant's motion to confirm the award. This appeal followed.

We begin by setting forth our well established standard of review of arbitration awards. "Judicial review

the claim that the award was against public policy, and the parties did not address that issue on appeal.

[7] General Statutes § 52-418 (a) provides: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[8] General Statutes § 52-417 provides: "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

of arbitral decisions is narrowly confined." *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, 248 Conn. 108, 114, 728 A.2d 1063 (1999). When the submission to an arbitrator is unrestricted, as is the case before us,[9] "the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . .

"Where the submission does not otherwise state, the [arbitrator is] empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the [arbitrator] was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the [arbitrator's] decision of the legal questions involved." (Citation omitted; internal quotation marks omitted.) *State* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, 265 Conn. 771, 777–78, 830 A.2d 729 (2003). "Furthermore, in applying this general rule of deference to an arbitrator's award, [e]very reasonable presumption and intendment will be made in favor of the [arbitral] award and of the arbitrators' acts and proceedings." (Internal quotation marks omitted.) *Board of Education* v. *Civil Service Employees Affiliates, Local 760*, 88 Conn. App. 559, 566–67, 870 A.2d 473 (2005).

"Our deference to arbitral awards is, however, not unlimited. General Statutes § [52-418 (a) (4)] provides in relevant part that an arbitration award may be vacated 'if the [arbitrator has] exceeded [his] powers or so imperfectly executed them that a mutual, final

---

[9] The parties do not dispute that the submission was unrestricted.

and definite award upon the subject matter submitted was not made.' " Id., 567. The first part of § 52-418 (a) (4) is implicated in the present case.[10] "[I]n our construction of § 52-418 (a) (4), we have, as a general matter, looked to a comparison of the award with the submission to determine whether the [arbitrator has] exceeded [his] powers." (Internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 84, 881 A.2d 139 (2005); see also *State* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, supra, 265 Conn. 778.

The defendant claims that the court, in vacating the arbitration award, improperly exceeded its standard of review of the award. Specifically, the defendant argues that the court improperly substituted its interpretative judgment for that of the arbitrator and improperly reviewed the evidence and found facts. In contrast, the plaintiff asserts that the court properly granted its application to vacate the arbitration award because the arbitrator had exceeded the scope of his authority by ignoring and altering article nineteen of the collective bargaining agreement and by imposing "his own personal view of the situation substituting that view for the chief's . . . ." We agree with the defendant.

In the present case, the arbitrator framed the issue as: "What shall be the disposition of this grievance?"

---

[10] The court, in vacating the arbitration award, concluded that the arbitrator exceeded his authority. We recognize, however, that a claim that an arbitrator has exceeded his powers "may be established under § 52-418 in either one of two ways: (1) the award fails to conform to the submission, or, in other words, falls outside the scope of the submission; or (2) the [arbitrator] manifestly disregarded the law." *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 85, 881 A.2d 139 (2005). The parties in the present case do not address the issue of whether the arbitrator exceeded his authority by manifestly disregarding the law. Accordingly, we confine our analysis to determining whether the court properly vacated the award on the ground that the arbitrator exceeded his authority in failing to conform the award to the submission.

The parties agreed to that statement of the issue. As we stated previously, the grievance at issue concerned Oritz' refusal to return Rosa to patrol duty after the investigations of the fatal shooting had exonerated Rosa and after Opsahl had determined that Rosa was ready to resume his patrol duties. An unrestricted submission, such as this, empowered the arbitrator to decide all factual and legal questions concerning the submission. *State* v. *New England Health Care Employees Union, District 1199, AFL-CIO,* supra, 265 Conn. 780–81. The court's review of the award, therefore, was limited to determining whether the award conformed to the submission. Id.

The arbitrator, pursuant to the submission, was required to decide the disposition of the grievance. In making that decision, the arbitrator interpreted article nineteen of the collective bargaining agreement, which concerned management's right to assign work. The arbitrator determined that a limitation of reasonableness was implicit in article nineteen, and, therefore, management must exercise its right to assign work in a reasonable manner. See generally F. Elkouri & E. Elkouri, How Arbitration Works (6th Ed. 2003) c. 9, pp. 479–80.[11] On the basis of this interpretation of article nineteen, the arbitrator, in reviewing the facts and evidence before him, concluded that Ortiz' exercise of his right

---

[11] "Arbitration and judicial decisions often cite the implied covenant of good faith and fair dealing [and] the doctrine serves as little more than an interpretive tool to aid arbitrators and judges in their case-by-case determinations of breaches of collective bargaining agreements. Arbitrators frequently use the implied covenant of good faith and fair dealing . . . . when the issue being arbitrated involves . . . aspects of reserved management rights. Essentially, the implied covenant of good faith and fair dealing serves as a springboard for a case-by-case determination of reasonableness. Thus, the covenant serves as the basis for the proposition that managerial discretion must be exercised reasonably and discretionary management decisions will be reviewed to determine if they were arbitrary, capricious, or discriminatory." F. Elkouri & E. Elkouri, supra, pp. 479–80.

to assign work was unreasonable and that it violated article nineteen of the collective bargaining agreement.

In its decision vacating the arbitration award, the court, rather than determining whether the award conformed to the submission, provided an independent interpretation of article nineteen—an interpretation different from that of the arbitrator. In effect, the court did not agree with the arbitrator's interpretation of the management rights clause as containing a limitation of reasonableness. Relying on its interpretative judgment, the court concluded that even if Ortiz' decision not to return Rosa to patrol duty "was ultimately unwise or overly cautious, it was a determination entirely within the discretion of the management . . . ."

Contrary to the plaintiff's assertion, the arbitrator did not alter or ignore article nineteen. The court's interpretation of article nineteen, namely, that management's right to assign work was not limited by a standard of reasonableness but, rather, was unfettered, was an interpretation that the arbitrator considered but rejected. The arbitrator, in deciding the disposition of the grievance, interpreted that provision of the collective bargaining agreement and found that it was limited by the doctrine of reasonableness. See *Local 391, Council 4, AFSCME* v. *Dept. of Correction*, 76 Conn. App. 15, 19, 817 A.2d 1279 (2003) ("Merely because an arbitral decision is not based on the express terms of a collective bargaining agreement does not mean that it is not properly derived from the agreement. An arbitrator is entitled to take cognizance of contract principles and draw on them for guidance in construing an agreement. . . . Neither a misapplication of principles of contractual interpretation nor an erroneous interpretation of the agreement in question constitutes grounds for vacatur." [Internal quotation marks omitted.]).

It is clear that the plaintiff and the court disagreed with the arbitrator's interpretation of the management

rights clause of the collective bargaining agreement. However, it is the arbitrator's judgment that was bargained for, and the court may not substitute its judgment for that of the arbitrator merely because its interpretation of the agreement or contract at issue might differ from that of the arbitrator. See *State* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, supra, 265 Conn. 780. Accordingly, we conclude that the court improperly substituted its interpretation of article nineteen of the collective bargaining agreement for that of the arbitrator.

The judgment of the trial court is reversed and the case is remanded to that court with direction to confirm the arbitrator's award.

In this opinion the other judges concurred.